**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 19-cv-23949-SINGHAL/McAliley**

MARIO TOCA, on behalf of himself and all
others similarly situated,

      Plaintiff,

v.

TUTCO, LLC, RHEEM MANUFACTURING
COMPANY and WATSCO, INC.,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO
## DISMISS AMENDED CLASS-ACTION COMPLAINT

This is a putative class action brought against Tutco, LLC ("Tutco"), Rheem

Manufacturing Company ("Rheem"), and Watsco, Inc. ("Watsco") (collectively,

"Defendants") for selling defective heaters and failing to include a "non-self-resetting

thermal cutoff" ("NSRT"), a safety backup switch.  *See* Am. Compl. ¶ 2 (DE [27]).

Defendants have moved to dismiss the Amended Complaint ("Motion to Dismiss")

(DE [29]).  The Court has carefully reviewed the Motion, Plaintiff's Response in

Opposition ("Response in Opposition") (DE [30]), and Defendants' Reply in Support

("Reply in Support") (DE [32]).

## I.    BACKGROUND

At some point in 2015 and in 2018, Plaintiff Mario Toca ("Toca") purchased air

conditioner units (or "HVAC units") for both his business and his residence.[1]  *See* Am.

---

[1] Toca purchased the HVAC units from D Air Conditioning Company but did not name it
as a defendant.

Compl. ¶ 13 (DE [27]); Mot. 2 (DE [29]). Rheem manufactures the HVAC units and they are distributed and wholesaled by Watsco. *See* Am. Compl. ¶¶ 15–16 (DE [27]). The third named defendant, Tutco, manufactures the heater component of the HVAC units, which is sold to Rheem and installed in the HVAC units. *Id.* ¶ 14.

According to Toca, the HVAC units placed in the market by Rheem and Watsco that contain Tutco's heaters "are defective, presenting real health and safety risks to consumers." Pl.'s Resp. in Opp'n 1 (DE [30]). Worse, actually; they are "ticking time bombs" in houses and places of business. Am. Compl. ¶ 36 (DE [27]).

These units present this danger because they do not include NSRTs. *See, e.g.*, *id.* ¶¶ 28; Pl.'s Resp. in Opp'n 2 (DE [30]). NSRTs are the "fail safe" mechanisms that regulate the HVAC units when automatically-resetting temperature limiting controls ("ART") fail. Pl.'s Resp. in Opp'n 2 (DE [30]); *see also* Am. Compl. ¶ 20–22 (DE [27]). Basically, "ARTs are designed to act as an internal thermostat." Am. Compl. ¶ 21 (DE [27]). When the "cycling" process of the air conditioner overheats, the unit potentially can ignite. *Id.* ¶ 23. Apparently, NSRTs "guard against this well known, dangerous, and life-threatening issue." *Id.* ¶ 24.

Without any allegations that the HVAC units malfunctioned, caused personal injury or property damage, nor any allegations of the amount he allegedly overpaid for "safer" HVAC units, Toca filed this multi-count complaint against Defendants for various causes of action. The seven counts include: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) violations of the Magnuson-Moss Warranty Act ("MMWA"), *see* 15 U.S.C. §§ 2301–2312, for breach of a written warranty; (4) violations of the MMWA for breach of an implied warranty; (5) injunctive and

declaratory relief; (6) unjust enrichment; and (7) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), *see* Fla. Stat. §§ 501.201–.213. Defendants now move to dismiss the claims.

## II. LEGAL STANDARD ON A MOTION TO DISMISS

"'When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Worthy*, 930 F.3d at 1217 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the Court is guided by the well-known principle that all well-pled allegations are assumed true and viewed in the light most favorable to the plaintiff. *Jackson v. Okaloosa Cty.*, 21 F.3d 1532, 1534 (11th Cir. 1994).

## III. DISCUSSION

The Court will analyze each of Toca's seven counts in turn. However, first, the Court must address some preliminary considerations, including a previously dismissed case in this district under substantially similar circumstances.

### A. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185 (S.D. Fla. 2017)

Defendants correctly point out that this action is not the first to be filed in this district on nearly identical allegations. In *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185 (S.D. Fla. 2017), the plaintiffs brought a class action against nine defendants—four

HVAC manufacturers, two electric-unitary-heater manufacturers, and three nationally

recognized certification laboratories. 347 F. Supp. 3d at 1189. Two of the nine—

Rheem and Tutco—are named defendants in this case.

> The amended complaint in *Koski* alleged:
>
> [E]lectric unitary heaters are an integral part of HVAC systems. Electric
> unitary heaters are designed to warm air as it flows over the heating
> elements. A non-self-resetting thermal cutoff, also known as a manually
> resettable thermal cutoff, is a safety device designed to prevent the
> heating elements from reaching hazardous temperatures and igniting fires.
> The Plaintiffs allege that the applicable safety standards require electric
> unitary heaters to have manually resettable thermal cutoffs, and that the
> Certification Defendants certified that the Heater and HVAC Manufacturer
> Defendants' products comply with these standards even though they do
> not have manually resettable thermal cutoffs. Thus, the Plaintiffs allege
> that all Defendants have made material misrepresentations to the Plaintiffs
> and concealed the dangers of the subject heaters and HVAC equipment.

*Id.* at 1190 (internal record citations omitted). The claims brought by the *Koski* plaintiffs

were almost the same as those brought here, including: breach of express warranty and

breach of the implied warranty of merchantability; violation of FDUTPA; and unjust

enrichment. *Id.* at 1199.

The court dismissed with prejudice all claims except for the FDUTPA claim, and

even that claim was subject to dismissal with prejudice as to some plaintiffs. *Id. Koski*

offers some highly persuasive rationale on several issues and claims presented in this

case and the Court is guided by much of *Koski*'s reasoning. While *Koski* is not

controlling, nor does it demand dismissal of Toca's claims, the Court will address how

*Koski*'s reasoning is sufficiently persuasive for the Court to arrive at the same

conclusions. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 509 (2016)

(Principle Number 62: "[A] federal court will treat a decision of a federal court of equal

rank respectfully and may be persuaded by it.").

4

### B.     Counts I–IV: Breaches of Warranty Against Rheem and Tutco

Toca's first four counts are for breaches of warranty against Rheem and Tutco.

Before the Court can discuss the merits of the four counts, some procedural hurdles

must first be addressed.

### 1.     Preliminary Considerations

Preliminarily, the Court will: (1) analyze whether Toca has standing to bring the

claims; (2) identify the governing law; and (3) discuss Defendants' argument that the

claims should be dismissed for Toca's failure to give the required pre-suit notice.

### a.     Toca's Standing to Bring the Four Breach-of-Warranty Claims

Even though Defendants do not raise standing in the Motion to Dismiss, because

it "is a threshold jurisdictional question which must be addressed prior to and

independent of the merits of a party's claims," *DiMaio v. Democratic Nat'l Comm.*, 520

F.3d 1299, 1301 (11th Cir. 2008), the Court must first address Toca's standing to bring

these claims, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91–92 (1998).

Standing consists of three elements that form the "irreducible constitutional minimum":

(1) an injury in fact; (2) causation; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560 (1992). "An injury in fact is 'an invasion of a legally protected interest

which is: (1) concrete and particularized, and (b) actual and imminent, not conjectural or

hypothetical." *Koski*, 347 F. Supp. 3d at 1191 (quoting *Lujan*, 504 U.S. at 560). An

injury "must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

In *Koski*, just like this case, none of the plaintiffs experienced any issues with

their HVAC units; no fires, no malfunctions, not even allegations of the units causing

personal injury or property damage. 347 F. Supp. 3d at 1191. Ordinarily, this would

have mandated dismissal for lack of standing. But the *Koski* court determined: "The Plaintiffs' allegations that they overpaid for the heaters and HVAC products are sufficient to establish standing at this stage in the case." *Id.* at 1192. In other words, the plaintiffs' injury was their overpayment for the heaters and HVAC equipment— products that were allegedly "less valuable as a result of the alleged defect." *Id.*; *see also Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1354 (S.D. Fla. 2012).

Here, however, Toca alleges neither a malfunction of his HVAC units *nor* overpayment for the units. The former is not really in dispute. There is no indication anywhere in the Amended Complaint that Toca alleges his units set fire, malfunctioned, failed to work properly, or the like. Toca would most likely not insist otherwise. In fact, the only mention of any sort of malfunction is that "hundreds, *or more likely* thousands, of class members have already had their Tutco and Rheem units, distributed by Watsco, overheat and/or catch fire as a result of the inherent defects." *See* Am. Compl. ¶ 46. Even this allegation is preceded by the introductory phrase "upon information and belief." *Id.* This is simply insufficient to allege an injury.

To the latter, upon a thorough review of the Amended Complaint—assuming all facts to be true and viewed in the light most favorable to Toca—the only allegations are general references to damages. For example, Toca claims: "As a direct and proximate result of the breach of said warranties, Plaintiff and Class members have been injured and are therefore entitled to damages. . . . Plaintiff and the class members are entitled to damages flowing from the breach of express warranty." Am. Compl. ¶ 104 (DE [27]). This is insufficient. Damages flow from a breach of contract only to the extent the

6

plaintiff can show an injury.  In other words, entitlement to damages presupposes and assumes an injury from the defendant's breach.

Toca has not pled any allegations of what he paid for the HVAC units, nor has he alleged the diminished value of the HVAC units without NSRTs and any other promises allegedly made in the express warranties.  Therefore, from the face of the Amended Complaint, he cannot plead the overpayment theory for standing that carried the plaintiffs in *Koski*.  In sum, he lacks standing to bring any claim for breach of warranty because he has not pled an injury.

Further, in this case, assuming Defendants made these warranties to Toca and Toca could otherwise properly plead a claim for breach of express warranty, he should be afforded leave to amend to cure the injury-in-fact deficiency.  However, because the Court finds he cannot adequately plead these causes of action even with curing this standing issue, further amendments would be futile.

### b.     Governing Law

Next, it is necessary to identify the governing law.  Defendants misidentify it, *see* Mot. 9–10 (DE [29]) ("The Amended Complaint alleges . . . breach of . . . express warranties under *common law* . . . ." (emphasis added)), and Toca makes only a passing reference-by-citation to it, *see* Am. Compl. ¶¶ 103, 116 (DE [27]).  This dispute boils down to, at its core, Toca's purchase of the HVAC units.  Such units are undeniably "goods" under Florida's adoption of the Uniform Commercial Code ("UCC") principally because, among other things, they are movable.  *See* Fla. Stat. § 672.105(1) (defining "goods" as "all things . . . which are movable at the time of identification to the contract for sale"); *see also Best Buy Co. v. Fedders N. Am., Inc.*, 202 F.3d 1004, 1010

(8th Cir. 2000) (classifying air conditioners as "goods" under the UCC). Accordingly, Toca's claims for breaches of warranty are governed by Florida's UCC, not the common law of contracts. *See* Fla. Stat. § 672.102 ("[The UCC] applies to transactions in goods.").

Florida's UCC also applies to the two federal MMWA claims. *Hache v. Damon Corp.*, 2008 WL 2157057, at *2 (S.D. Fla. May 20, 2008) ("[T]he MMWA is intended to supplement, not supplant, state law."). "In essence, [the Magnuson Moss Warranty Act] provides a remedy for state law warranty claims that can be enforced in federal court." *McLaughlin v. Monaco RV LLC*, 2015 WL 5355465, at *3 (M.D. Fla. Sep. 14, 2015).

### c.     Pre-Suit Notice Requirement

Finally, before addressing the merits of the claims for breach of warranty, the Court will address Defendant's argument that Toca's breach-of-warranty claims fail because he did not provide them with this required notice. Florida's UCC provides: "Where a tender has been accepted, the buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). The statute is abundantly clear: This pre-suit notice requirement is "a precondition of imposing liability." *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980). "[T]he burden is on the plaintiff to show that he gave the required notice within a reasonable time" in fulfillment of this threshold condition. *Id.*

Toca responds to Defendants with two arguments. First, he argues Defendants have received sufficient notice because they "have been sued multiple times, for different reasons, but always arising out of the same issue." Resp. in Opp'n 13

(DE [30]).  But he provides no case law supporting the position that the pre-suit notice requirement can be satisfied by pointing to prior lawsuits.  In fact, the statutory provision specifically places the burden on "the buyer" to provide notice.  Fla. Stat. § 672.607(3)(a).  Toca was not involved in the prior lawsuits and he admits this: "Defendants have received repeated noticed *by other consumers and industry professionals . . . .*"  Resp. in Opp'n 13 (DE [30]) (emphasis added).  Therefore, even if Toca were able to rely on other lawsuits for sufficient notice as a matter of law, he cannot do so here because these other suits were filed by *other plaintiffs* with, obviously, no connection here—thus, not "the buyer" here.

However, the Court agrees with Toca on his second argument: that Defendants cannot rely on this notice requirement because they are the *manufacturer*, not "the seller."  Rheem manufactures—not sells—the HVAC units and Tutco manufactures— not sells—the heater component of the HVAC units.  Based on the plain language of the statute alone, Toca is correct.  *See* Fla. Stat. § 672.607(3)(a) ("[T]he buyer must . . . notify the *seller* . . . ." (emphasis added)).  Further, case law supports this narrow reading of the statute and Florida courts have determined that this requirement does not apply to *manufacturers*.  *See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, 2014 WL 12640371, at *3–4 (M.D. Fla. Aug. 14, 2014) ("Plaintiffs are correct in their assertion that notice is required to be given to the *seller*, not the manufacturer, under Florida law." (emphasis in original)).

Defendants' reliance on *Burns v. Winnebago Industries, Inc.*, 492 F. App'x 44 (11th Cir. 2012) is unavailing.  There, the terms of the warranty at issue required the plaintiffs to notify Winnebago (the manufacturer) in writing of any defects and,

9

subsequently, to contact Winnebago if the local dealer did not repair the vehicle to the buyer's satisfaction. *Id.* at 46. The defendant, Winnebago, argued the plaintiffs did not provide this pre-suit notice. *Id.* The plaintiffs responded they were not required to because the statute required notice "*only* to the seller," which was the local dealer. *Id.* at 48 (emphasis in original). The Eleventh Circuit rejected that argument, holding that the statutory, pre-suit notice requirement "merely lists one act of notice that a buyer must give, and it does not speak to whether additional notice may be required by the express terms of the warranty itself." *Id.* Thus, the parties were free to contract and place additional requirements, including notice to the manufacturer. *Id.* Because they did, the plaintiffs were bound by the contract and required to give the seller *and* Winnebago pre-suit notice. *Id.*

Here, there are no indications, nor any allegations, that the parties agreed to *additional* pre-suit notice apart from, and in addition to, the statutory requirements. And the Court will not construct any. Therefore, the only requirements controlling Toca's duty to give notice emanate from the statute. As a matter of law, Toca's failure to give notice to Defendants of a breach is not disqualifying of his right to bring this action.

Finally, the Court notes the distinction between this case and *Koski* as to this pre-suit notice requirement. In *Koski*, the court did not reach the merits on *any* of the breach-of-warranty claims because of the plaintiffs' failure to provide the pre-suit notice. 347 F. Supp. 3d at 1192. But, it is significant to note, the plaintiffs conceded and "agreed" that their warranty claims were subject to dismissal for this reason. *Id.* Therefore, with both parties agreeing to dismissal, the Court was required to dismiss the claims for failure to provide the notice, despite several defendants being manufacturers,

not sellers.  *Id.*  The Court here does not face this predicament.  Toca does not concede

this point.  And the Court finds accordingly.

In sum, Toca lacks standing to bring the four breach-of-warranty claims because

he has not—and cannot—plead an injury.  The Court will discuss below why leave to

amend would be futile.  In the discussion below, the Court will apply Florida's UCC, as

this is the law controlling the claims.  Finally, because the parties did not agree to

additional pre-suit notice beyond that of the statute, Toca was not required to give

notice to Defendants, who are not sellers.

### 2. Counts I and III: Breach of Express Warranty Under Florida's UCC and Breach of Written Warranty Under the MMWA

Toca's first and third causes of action are claims for breach of an express

warranty.  At a minimum, a claim for breach of contract must identify "the actual terms of

the contract allegedly breached."  *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F.

App'x 606, 608 (11th Cir. 2015).  It follows that, to state a claim for breach of an express

warranty, the plaintiff must first identify the express warranty that the defendant

allegedly breached.  *See id.*

Florida's UCC provides that a seller[2] creates an express warranty one of the

following ways:

---

[2] As discussed above, the UCC's pre-suit notice requirement applies only to *sellers*, not manufacturers.  Although Defendants do not raise this issue, the Court notes that the case law does not apply such a narrow reading to the UCC's section on express warranties—specifically, as to the proper defendant in a claim for breach of express warranty.  Despite the statute's use of the word "seller," Florida courts have held a plaintiff *can* state a claim for breach of warranty against *manufacturers*.  *See Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of Am., Inc.*, 444 So. 2d 1068, 1069–70 (Fla. 3d DCA 1984).

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Fla. Stat. § 672.313(1)(a)–(c). "[A]n express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction, and on which the buyer justifiably relies as part of the 'basis of the bargain.'" *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. 1st DCA 1984) (internal citations omitted).

Here, nothing in the Complaint alleges Defendants made any sort of express warranties based on any of the three paths in section 672.313, Florida Statutes. To the contrary, Toca devotes an entire subsection of the Amended Complaint to the *lack* of warranties provided by Defendants. *See* Am. Compl. ¶¶ 38–50. The only document that reasonably could be interpreted as a "warranty" is a certificate titled "Conditional Warranty" with a subtitle "Consumer Warranty Confirmation" from Rheem. *See id.* ¶ 38. This warranty provides standard information like the model and serial numbers, registration date, and installation date. *Id.* From this "Conditional Warranty," Toca opines "[i]t is unreasonably difficult, for even a well-informed consumer to locate and determine the warranty and relevant terms that apply to his or her product." *Id.* ¶ 40.

Then, in the Response in Opposition, he argues the "terms and conditions of the warranties for both Rheem and Tutco [are] clearly identified," and cites to paragraph 45

12

of the Amended Complaint.  *See* Resp. in Opp'n 8 (DE [30]).  While he most likely

meant paragraphs 43 and 44 of the Amended Complaint, the allegations therein are

block-quoted paragraphs from warranties that Toca *believes*, but is not sure, apply to

his HVAC units.  Defendants insist that such speculation on what the terms of the

warranty "may be" and what Toca "thinks" they are is insufficient.  The Court agrees.

The allegations in these two paragraphs make abstract guarantees that the

products would be "free from defects in both workmanship and materials."

Am. Compl. ¶¶ 43–45.  The point Toca misses is that the Conditional Warranty

certificate does not include a single express warranty.  See screenshot from the

Amended Complaint below.

At a minimum, even assuming Defendants made affirmative promises of fact and

created express warranties on which Toca could state a claim, not a single allegation in

the Amended Complaint points to a promise that the HVAC units specifically would

include NSRTs.  Because this is the entire basis of Toca's express-warranty claims, this

is fatal to his action.

>        3.        **Counts II and IV: Breach of Implied Warranty of
>                  Merchantability Under Florida's UCC and Breach of Implied
>                  Warranty Under the MMWA**

Toca's second and fourth causes of action are claims for breach of the implied

warranty of merchantability.  When the seller is a "merchant," every contract for the sale

of goods includes an implied warranty "that the goods shall be merchantable."  Fla. Stat.

§ 672.314; *see also id.* § 672.104 (defining "merchant" as "a person who deals in goods

of the kind or otherwise by occupation holds himself or herself out as having knowledge

or skill peculiar to the practice or goods involved in the transaction").  For a good to be

"merchantable," the statute provides a number of requirements. *Id.* § 672.314(2)(a)–(f).

Most commonly, the goods must "[p]ass without objection in the trade," *id.* §

672.314(2)(a), and be "fit for the ordinary purposes for which such goods are used," *id.*

§ 672.314(2)(c).

"Under Florida law, privity of contract is required to maintain an action for breach

of an implied warranty [of merchantability]." *Ocana v. Ford Motor Co.*, 992 So. 2d 319,

325 (Fla. 3d DCA 2008). Defendants argue counts II and IV fail because none of them

sold the HVAC units to Toca directly. *See* Mot. 13–15 (DE [29]). This is not disputed,

either. Much of the Court's preceding analysis (specifically that on the pre-suit notice

requirement) focuses on the fact that none of the three Defendants named in this

lawsuit are sellers.

Toca argues that, while "some courts have indeed strictly required privity . . . ,

*this* [*district*] *has not.*" Resp. in Opp'n 14 (DE [30]) (emphasis in original). He cites to

*Pegasus Aviation IV, Inc. v. Aircraft Composite Technologies, Inc.*, 2016 WL 3390122

(S.D. Fla. June 17, 2016), for the notion that this district has "persuasively

distinguished" the Florida cases to which Defendants cite. To say a federal court

"distinguished" a state-court case implies the federal court created a new rule or line of

jurisprudence. This cannot be so. Because the UCC is a creature of state law and, of

course, federal courts sitting in diversity simply apply the law of the forum state, *Ohio

State Troopers Ass'n v. Point Blank Enters., Inc.*, 2018 WL 3109632, at *4 (S.D. Fla.

Apr. 5, 2018), the courts in this district have no authority to distinguish a bright-line

Florida rule.

Rather, in *Pegasus Aviation* and *Ohio State Troopers Association*, the court discussed two recognized *exceptions* to the bright-line privity rule under Florida case law. *See Pegasus Aviation*, 2016 WL 3390122, at *5 (recognizing exception that a plaintiff can state a claim for breach of implied warranty "even without direct privity, as long as [he or she] adequately alleges that [he or she] was a third-party beneficiary of the contract"); *Ohio State Troopers Ass'n*, 2018 WL 3109632, at *6 (recognizing exception that a plaintiff can state a claim for breach of implied warranty despite lack of privity "when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party). The allegations here are not sufficient for Toca to benefit from either of these exceptions.

For the third-party-beneficiary exception, he fails to cite to a single allegation in the Amended Complaint, opting to rely only on the language of the *Ohio State Troopers Association* case. *See* Resp. in Opp'n 14–15 (DE [30]). The Court cannot find any allegations in the Amended Complaint that would satisfy this exception even on its own, independent review of the pleading. For the direct-contact exception, Toca can rely only on the fact that Defendants provided the warranty certificates "directly to" him. *Id.* The Court finds this inadequate to satisfy this exception. The Florida cases construing and applying this exception involve a much stronger tie between the purchaser-plaintiff and the manufacturer; they involved *direct* contact by means of actual one-on-one communication.

Toca was not in privity with any of Defendants. Toca cannot state a claim for breach of the implied warranty of merchantability. *See Padilla v. Porsche Cars N. Am., Inc.,* 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019) ("Time and again, Florida courts have

dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant.").

### C.      Count V: Injunctive and Declaratory Relief

Toca's fifth cause of action is a claim for injunctive and declaratory relief. For either of these two remedies, the plaintiff must allege an "actual controversy." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). That is, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Id.* Defendants argue there are no allegations of a "substantial continuing controversy between" Toca and them because the HVAC units never failed, malfunctioned, or caused damage otherwise.

However, the Court defers on this determination because these remedies are "procedural devices" and they assume the plaintiff has pled "an underlying substantive cause of action." *Eveillard v. Nationstar Mortg. LLC*, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015) ("Declaratory relief . . . cannot stand on its own."). As discussed below, Toca's FDUTPA claim is amenable to amending, if he determines the infirmities identified by the Court can be remedied. Thus, if a second amended complaint adequately and properly pleads a claim under FDUTPA, Toca may be able to plead a claim for injective and declaratory relief, as well.

### D.      Count VI: Unjust Enrichment

Toca's sixth cause of action is a claim for unjust enrichment. He names all three Defendants. The basis for this claim is he paid "a premium price" for the HVAC units

16

and Defendants benefited by placing into the stream of commerce defective heaters, rather than the enhanced units with NSRTs.

Before the Court even analyzes its merits, this claim must be dismissed because it is duplicative of his claims for breach of express warranty in Counts I and III. "[A] plaintiff cannot maintain a claim for unjust enrichment if there is an express warranty governing the plaintiff's rights." *Koski*, 347 F. Supp. 3d at 1195. Thus, "[u]nder Florida law, unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). Further, the fact that the Court has determined his express-warranty claims fail as a matter of law and must be dismissed is of no consequence. In *Koski*, the court too dismissed the unjust-enrichment claim because the plaintiffs "*allege*[*d*] the existence of an express warranty." 347 F. Supp. 3d at 1195. That the plaintiffs *alleged* such an existence, not necessarily proved, was sufficient to bar them from *also* bringing a claim for unjust enrichment "on the same factual allegations." *Id.* The same outcome must control here, as well.

Toca's only response to this is "*Koski* was wrong." Resp. in Opp'n 18 (DE [30]). But his reliance on *Heuer v. Nissan North America, Inc.*, 2017 WL 3475063, at *6 (S.D. Fla. 2017), does not support his position. The well-established rule is: "[E]quitable remedies are not available under Florida law when adequate legal remedies exist." *Id.* Toca points to *Heuer* for its recognition of an exception to this rule: "[It] does not apply to unjust enrichment claims." *Id.* But ultimately, *Heuer* turned on the court holding a FDUTPA claim was not duplicative of an unjust-enrichment claim. *Id.* The Court is unpersuaded by this analogy. A FDUTPA claim does not presuppose the existence of a

contract like an express-warranty claim does.  The latter assumes the terms and conditions of the underlying contract controls any remedies.

Nevertheless, even on the merits, Toca's claim fails.  The purpose of a claim for unjust enrichment "is to provide restitution where one person has been unjustly enriched at the expense of another."  *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018).  The key component is the plaintiff's conferral of a benefit on the defendant for which the plaintiff has not received the value of that benefit in return.  *Id.*  Courts routinely dismiss unjust-enrichment claims when that plaintiff "fail[s] to plausibly plead that the circumstances are such that it would be inequitable for the defendant to retain the benefit."  *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 359 F. Supp. 3d 1163, 1176 (S.D. Fla. 2018).

The Court determines there is nothing inequitable about these circumstances. Under the most liberal reading of the allegations in the Amended Complaint, Toca paid D Air Conditioning Company for the HVAC units and received properly functioning HVAC units.  The Court rejects the notion that Defendants have been "unjustly enriched" by providing properly functioning units.

### E.     Count VII: Violation of FDUTPA

Toca's seventh cause of action is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act.  "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (quotation omitted).  Stated otherwise, the law allows for a plaintiff to recover under FDUTPA if he proves he was injured "by an objectively deceptive act or statement."  *State Farm Mut.*

*Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1316 (S.D. Fla. 2017).  Under Florida law, "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (internal quotations omitted).

Defendants argue Toca's allegations are mere conclusory statements of "unfair" and "unlawful" business practices that are "fraudulent."  The Court agrees.  FDUTPA claims are subject to the federal rules' "heightened" pleading standard under Rule 9(b).  *See USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *2.  Rule 9(b) requires pleading with "particularity," which the Eleventh Circuit has elementized accordingly:

> (1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) it; (3) the content of such statements and the manner in which they caused the plaintiff to be misled; (4) what the defendants obtained as a result of the fraud."

*USA Nutraceuticals Grp., Inc.*, 2016 WL 4254257, at *2.

The Amended Complaint falls short of satisfying Rule 9(b).  Nevertheless, because a dismissal under Rule 9(b) is a technical dismissal rather than on the merits, the Court will dismiss the FDUTPA claim **without** prejudice and with leave to amend.  *See Henderson v. Wash. Nat'l Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006) ("[I]t has generally been held that the remedy for failure to satisfy Rule 9(b) is not dismissal on the merits, but rather is an opportunity for the plaintiff to replead.").  This will conclude the Court's analysis, however, to avoid any construction of this order's providing guidance or advice on how to replead this count.

**IV.      CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants'

Motion to Dismiss (DE [29]) is **GRANTED**.  The Amended Complaint is **DISMISSED**

**WITH PREJUDICE** as to Counts I, II, III, IV, and VI.  Counts V and VII are **DISMISSED**

**WITHOUT PREJUDICE**.  If Toca can cure the pleading deficiencies identified in this

order, he may file a second amended complaint within **fourteen (14) days** from the date

of this order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida this 4th day of

March 2020.

**RAAG SINGHAL**
**UNITED STATES DISTRICT JUDGE**

Copies to counsel via CM/ECF